**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

CUC WEST,
an individual,                                                  Case No.:

      Plaintiff,

v.

MERRICK BANK CORPORATION,
d/b/a MERRICK BANK,
a foreign for-profit corporation, and
CARDWORKS SERVICING, LLC,
a foreign limited liability company,

      Defendants.

_____/

**VERIFIED COMPLAINT**

      **COMES NOW**, Plaintiff, CUC WEST (hereinafter, "Plaintiff"), by and through the undersigned counsel, and hereby sues Defendants, MERRICK BANK CORPORATION, d/b/a MERRICK BANK (hereinafter, "Merrick") and CARDWORKS SERVICING, LLC (hereinafter, "CWS") (hereinafter collectively, "Defendants").  In support thereof, Plaintiff states:

**INTRODUCTION AND PRELIMINARY STATEMENT**

      This is an action for damages brought by an individual consumer for Defendant's violations of the Florida Consumer Collection Practices Act, Chapter 559, Florida Statutes (hereinafter, the "FCCPA") and the Telephone Consumer Protection Act, 47 United States Code, Section 227 (hereinafter, the "TCPA").

**JURISDICTION, VENUE & PARTIES**

      1.     Jurisdiction of this Court arises under 47 United States Code, Section 227(b)(3), 28 United States Code, Section 1337, and supplemental jurisdiction exists for the FCCPA claims pursuant to 28 United States Code, Section 1367.

2.     Defendants are subject to the jurisdiction of this Court as Defendants each regularly transact business in this District and the events described herein occur in this District.

3.     At all material times herein, Plaintiff is an individual residing in Pinellas County, Florida.

4.     At all material times herein, Merrick is a foreign for-profit corporation existing under the laws of the state of Utah with its principal place of business located at 10705 South Jordan Gateway, Suite 200, South Jordan, Utah 84095.

5.     At all material times herein, CWS is a foreign limited liability company existing under the laws of the state of Delaware with its principal place of business located at 101 Crossways Park Drive W., Woodbury, New York 11797.

## FCCPA STATUTORY STRUCTURE

6.     The FCCPA is a state consumer protection statute, modeled after the FDCPA, a statute designed to prohibit unfair, deceptive, and abusive practices in the collection of consumer debts as well as to protect against the invasion of individual privacy.  15 U.S.C., §§ 1692(a) and (e); Fla. Stat. §§ 559.55 and 559.77(5).

7.     The FDCPA imposes civil liability on any debt collector—and the FCCPA imposes liability on any creditor/person as well as any debt collector—who "uses any instrumentality of interstate commerce or the mails in any business the principal purposes of which is the collection of any debts," or who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another" and both statutes prohibit engaging in particular violative conduct in connection with collecting consumer debts.  15 U.S.C. § 1692(a)(6); Fla. Stat. § 559.55(5).

8.     Specifically, the FCCPA prohibits unlawful debt collection "communication" with consumer debtors, which is defined as "the conveying of information regarding a debt *directly or*

2

*indirectly* to any person *through any medium*."  15 U.S.C. § 1692(a)(2); Fla. Stat. § 559.55(2)

(emphasis added).

9.     For example, the FCCPA prohibits a debt collector from engaging in any conduct

the natural consequence of which is to harass, oppress, or abuse any person in connection with the

collection of a consumer debt, and prohibits a person from communicating directly with a debtor

known to be represented by an attorney in an attempt to collect a consumer debt.  *See* 15 U.S.C.

§§ 1692(c)-(d) and Fla. Stat. §§ 559.72(7) and (18).

## TCPA STATUTORY STRUCTURE

10.     Congress enacted the TCPA in an effort to restrict pervasive use of automated or

prerecorded telephone calls that invade consumers' personal privacy.  Pub L. 102-243, § 2, Dec.

20, 1991, 105 Sta. 2394 (1), (5), and (10).

11.     Congress intended to prevent automated or pre-recorded telephone calls as "the

only effective means of protecting telephone consumers from this nuisance and privacy invasion."

*Id*. at §§ (5) and (12).

12.     Under the TCPA, any person who initiates calls to any number assigned to a cellular

telephone service using any automated telephone dialing system or artificial or prerecorded voice

without the recipient's prior express consent is liable to the recipient for actual monetary loss, or

up to $500.00 in damages for each violation of the TCPA, whichever is greater.  47 U.S.C. §

227(b)(3)(B).

13.     Additionally, under the TCPA, the court may increase the damage award up to three

(3) times, or up to $1,500.00, for each willful or knowing violation of the TCPA.  *Id* at §

227(b)(3)(C).

## **GENERAL ALLEGATIONS**

14.     At all material times herein, Defendants are each a "creditor" as defined by Florida Statutes, Section 559.55(5).

15.     At all material times herein, Plaintiff is a "debtor" or "consumer" as defined by Florida Statutes, Section 559.55(8).

16.     At all material times herein, Defendants attempt to collect a debt, specifically a balance alleged due on a credit card account referenced by account number ending in -3623 (hereinafter, the "Debt").

17.     At all material times herein, the Debt is a consumer debt, resulting from a transaction for goods or services and incurred primarily for personal, household, or family use.

18.     At all material times herein, Defendants are each a "person" subject to Florida Statutes, Section 559.72.  *See* Fla. Stat. §§ 559.55(5), (7); *Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809 (Fla. 4th DCA 2002).

19.     At all material times herein, Defendants' conduct, with respect to the Debt complained of below, qualifies as "communication" as defined by Florida Statutes, Section 559.55(2).

20.     At all material times, CWS services, manages, or otherwise collects consumer debts on Merrick's behalf, with its consent, knowledge, and approval.

21.     At all material times herein, Defendants act themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

22.     All necessary conditions precedent to the filing of this action occurred or Defendants waived or excused the same.

## **FACTUAL ALLEGATIONS**

23.     Defendants made telephone calls and sent text messages, as more specifically alleged below, to Plaintiff's cellular telephone number 727-XXX-2275 (hereinafter, "Cellular Telephone") using an automatic telephone dialing system (hereinafter, "ATDS"), a predictive telephone dialing system (hereinafter, "PTDS"), or an artificial or pre-recorded voice (hereinafter, "APV").

24.     Plaintiff is the possessor, controller, and regular user of a Cellular Telephone with assigned telephone number 727-XXX-2275.

25.     At no time herein did Defendants possess Plaintiff's prior express consent to make calls or send text messages to Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV.

26.     Further, if Merrick or CWS contends it did possess such consent at one point in time, Plaintiff nonetheless revoked any alleged prior existing consent the moment Plaintiff demanded that Defendant cease contacting Plaintiff's Cellular Telephone, advised Defendants that she was represented by an attorney with respect to the Debt, and provided Defendants with said attorney's contact information.

27.     Additionally, if Defendants contend the below-referenced calls and text messages were made for "informational purposes only," Defendants nevertheless lacked the required prior express written consent necessary to make informational calls or send informational text messages to Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV.

28.     On or about May 21, 2018, Plaintiff retained Leavengood, Dauval & Boyle, P.A., d/b/a LeavenLaw (hereinafter, "Undersigned Counsel") with respect to her debts generally, including the Debt.

29.     On or about May 30, 2018, Undersigned Counsel sent a facsimile transmission to Defendants providing Defendants with knowledge of Undersigned Counsel's legal representation

of Plaintiff with respect to the Debt, providing Defendant's with Undersigned Counsel's contact information, requesting that Defendants cease communicating with Plaintiff in an attempt to collect the Debt, and requesting that Defendants instead direct such communications to Undersigned Counsel's office (hereinafter, the "Fax of Representation").  Please see attached a true and correct copy of said Fax of Representation and corresponding fax delivery confirmation sheet labeled as Composite Exhibit "A."

30.     Moreover, the Fax of Representation explicitly revoked any purported prior existing consent Defendants possessed authorizing Defendants to contact Plaintiff on her Cellular Telephone using an ATDS, PTDS, or APV via calls or text messages.  *See* Ex. A.

31.     Defendants received the Fax of Representation.

32.     Despite Defendants receiving the Fax of Representation, Defendants subsequently continued to attempt to collect the Debt directly from Plaintiff by sending billing statements, by sending automated text messages to Plaintiff's Cellular Telephone, and by making calls to Plaintiff's Cellular Telephone using an ATDS, PTDS, or APV in an attempt to collect the Debt, as further detailed below.

33.     Additionally, each of the below-referenced communications directed to Plaintiff were either initiated by Merrick, or by CWS on Merrick's behalf, as CWS services, manages, or otherwise attempts to collect the Debt on Merrick's behalf.

34.     In June 2018, despite Defendants possessing actual knowledge of Undersigned Counsel's legal representation of Plaintiff with respect to the Debt and Undersigned Counsel's contact information, Defendant made *at least* two (2) calls directly to Plaintiff's Cellular Telephone in an attempt to collect the Debt.

35.     Moreover, Defendants made the immediately-aforementioned calls from telephone number 866-529-9848 using an ATDS, PTDS, or APV.

36. Furthermore, Defendants made the calls referenced in paragraph thirty-four (34) above despite Plaintiff revoking any purported prior express consent Defendant possessed to make calls to Plaintiff's Cellular Telephone using an ATDS, PTDS, or APV via the Fax of Representation.

37. On or about June 27, 2018, despite Defendants possessing actual knowledge of Undersigned Counsel's legal representation of Plaintiff with respect to the Debt and Undersigned Counsel's contact information, Defendants sent a billing statement directly to Plaintiff in an attempt to collect the Debt. Please see attached a true and correct copy of said billing statement labeled as Exhibit "B."

38. On or about July 27, 2018, despite Defendants possessing actual knowledge of Undersigned Counsel's legal representation of Plaintiff with respect to the Debt and Undersigned Counsel's contact information, Defendants sent a billing statement directly to Plaintiff in an attempt to collect the Debt. Please see attached a true and correct copy of said billing statement labeled as Exhibit "C."

39. On or about August 27, 2018, despite Defendants possessing actual knowledge of Undersigned Counsel's legal representation of Plaintiff with respect to the Debt and Undersigned Counsel's contact information, Defendants sent a billing statement directly to Plaintiff in an attempt to collect the Debt. Please see attached a true and correct copy of said billing statement labeled as Exhibit "D."

40. On or about September 27, 2018, despite Defendants possessing actual knowledge of Undersigned Counsel's legal representation of Plaintiff with respect to the Debt and Undersigned Counsel's contact information, Defendants sent a billing statement directly to Plaintiff in an attempt to collect the Debt. Please see attached a true and correct copy of said billing statement labeled as Exhibit "E"

41.     On or about October 8, 2018 at approximately 1:32 p.m., despite Defendants possessing actual knowledge of Undersigned Counsel's legal representation of Plaintiff with respect to the Debt and Undersigned Counsel's contact information, Defendants sent a text message (e.g., SMS) directly to Plaintiff's Cellular Telephone.  Please see a true and correct copy of a screenshot from Plaintiff's Cellular Telephone of said text message labeled as Exhibit "F."

42.     Defendants sent the immediately-aforementioned text message from 354-22 using an ATDS, PTDS, or APV in an attempt to collect the Debt.

43.     October 25, 2018 at approximately 2:36 p.m., despite Defendants possessing actual knowledge of Undersigned Counsel's legal representation of Plaintiff with respect to the Debt and Undersigned Counsel's contact information, Defendants sent a text message directly to Plaintiff's Cellular Telephone.  Please see a true and correct copy of a screenshot from Plaintiff's Cellular Telephone of said text message labeled as Exhibit "G."

44.     Defendants sent the immediately-aforementioned text message from 354-22 using an ATDS, PTDS, or APV in an attempt to collect the Debt.

45.     On or about October 28, 2018, despite Defendants possessing actual knowledge of Undersigned Counsel's legal representation of Plaintiff with respect to the Debt and Undersigned Counsel's contact information, Defendants sent a billing statement directly to Plaintiff in an attempt to collect the Debt.  Please see attached a true and correct copy of said billing statement labeled as Exhibit "H."

46.     On or about November 4, 2018 at approximately 2:17 p.m., despite Defendants possessing actual knowledge of Undersigned Counsel's legal representation of Plaintiff with respect to the Debt and Undersigned Counsel's contact information, Defendants sent a text message directly to Plaintiff's Cellular Telephone.  *See* Ex. G.

47.     Defendants sent the immediately-aforementioned text message from 354-22 using

8

an ATDS, PTDS, or APV in an attempt to collect the Debt.

48.     On or about November 12, 2018 at approximately 1:32 p.m., despite Defendants possessing actual knowledge of Undersigned Counsel's legal representation of Plaintiff with respect to the Debt and Undersigned Counsel's contact information, Defendants sent a text message directly to Plaintiff's Cellular Telephone.  Please see a true and correct copy of a screenshot from Plaintiff's Cellular Telephone of said text message labeled as Exhibit "I."

49.     Defendants sent the immediately-aforementioned text message from 354-22 using an ATDS, PTDS, or APV in an attempt to collect the Debt.

50.     On or about November 16, 2018 at approximately 2:20 p.m., despite Defendants possessing actual knowledge of Undersigned Counsel's legal representation of Plaintiff with respect to the Debt and Undersigned Counsel's contact information, Defendants sent a text message directly to Plaintiff's Cellular Telephone.  Please see a true and correct copy of a screenshot forwarded from Plaintiff's Cellular Telephone of said text message labeled as Exhibit "J."

51.     Defendants sent the immediately-aforementioned text message from 354-22 using an ATDS, PTDS, or APV in an attempt to collect the Debt.

52.     On or about November 27, 2018, despite Defendants possessing actual knowledge of Undersigned Counsel's legal representation of Plaintiff with respect to the Debt and Undersigned Counsel's contact information, Defendants sent a billing statement directly to Plaintiff in an attempt to collect the Debt.  Please see attached a true and correct copy of said billing statement labeled as Exhibit "K."

53.     On or about November 30, 2018 at approximately 2:58 p.m., despite Defendants possessing actual knowledge of Undersigned Counsel's legal representation of Plaintiff with respect to the Debt and Undersigned Counsel's contact information, Defendants sent a text

message directly to Plaintiff's Cellular Telephone.  Please see a true and correct copy of a screenshot forwarded from Plaintiff's Cellular Telephone of said text message labeled as Exhibit "L."

54.     Defendants sent the immediately-aforementioned text message from 354-22 using an ATDS, PTDS, or APV in an attempt to collect the Debt.

55.     As a direct result of Defendants' actions, Plaintiff suffered emotional distress, anxiety, inconvenience, and frustration, believing that Plaintiff's request that Defendants stop contacting Plaintiff directly—including via her Cellular Telephone—was wholly ineffective, that retaining Undersigned Counsel with respect to the Debt and advising Defendants of the same was wholly ineffective, and that the frequent, repeated debt collection attempts regarding would simply have to be endured.

56.     It is Defendants' corporate policy to use an ATDS, a PTDS, or an APV when attempting to collect consumer debts, including the Debt (hereinafter, "Corporate Policy").

57.     Defendants employed their corporate policy of using an ATDS, a PTDS, or an APV when Defendants made the calls and sent the text messages to Plaintiff's Cellular Telephone in this case in their attempts to collect the Debt.

58.     Defendants made calls and sent text messages to Plaintiff's Cellular Telephone with no effective way for Plaintiff to remove her Cellular Telephone number from Defendants' telephone dialing system and/or text message system.

59.     Defendants made telephone calls and sent text messages, or caused calls and text messages to be made, to Plaintiff with no effective way for Defendants to remove the Cellular Telephone number from Defendants' telephone dialing system and/or text message system.

60.     Defendants' Corporate Policy provides no effective way for a consumer to effectively revoke any prior existing consent to be called by, or receive text messages from, an

ATDS, PTDS, or APV to make Defendants cease making calls and sending text messages to Plaintiff's Cellular Telephone.

61.     Defendants' Corporate Policy and procedures are structured as to continue to call and sent text messages to individuals like Plaintiff using an ATDS, a PTDS, or an APV, regardless of how many times said individuals and request that Defendants cease contacting a cellular telephone regarding a debt owed to Defendants.

62.     Upon information and belief, Defendants engaged in a pattern and practice of unlawful debt collection and invasion of privacy, repeatedly and willfully sending text messages to consumers' cellular telephones in an attempt to collect debts, using an ATDS, a PTDS, or an APV despite lacking consumers' prior express consent to do so.

63.     Defendants willfully, knowingly and repeatedly undertake these practices to increase revenue and profitability at the direct expense of consumers' livelihoods and privacy.

64.     Based on Defendants' pattern and practice described herein, this Court should grant significant and substantial punitive damages sufficient enough to prevent Defendants from continuing this pattern and practice and to deter such similar future conduct in the Middle District of Florida.

65.     Plaintiff retained Undersigned Counsel for the purpose of pursuing this matter against Defendants, and Plaintiff is obligated to pay her attorneys a reasonable fee for their services.

66.     Due to both professional and personal commitments, as well as the continued and increasing stress associated with the continued barrage of Debt collection communications from Defendants, Plaintiff was not able to record the specifics on each and every telephone call, text message, billing statement, and letter that Defendants sent to Plaintiff.  Plaintiff asserts, however, that the above-referenced communications are but a sub-set of the telephone calls, text messages,

letters, and billing statements Plaintiff received from Defendants in violation of the FCCPA and the TCPA.

67.     Furthermore, Defendants are in the best position to determine and ascertain the number and methodology of Debt collection communications directed to Plaintiff.

68.     Florida Statutes, Section 559.77 provides for the award of $1,000.00 statutory damages, actual damages, punitive damages, declaratory and injunctive relief, and an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against Defendants.

69.     United States Code, Title 47, Section 227(b)(3) provides for the award of $500.00 or actual damages, whichever is greater, for each telephone call made or text message sent, directly or indirectly, using any ATDS, PTDS, or APV to Plaintiff's Cellular Telephone in violation of the TCPA or the regulations proscribed thereunder.

70.     Additionally, the TCPA, Section 227(b)(3) allows the trial court to increase the damages up to three times, or $1,500.00, for each telephone call made or text message sent, directly or indirectly, using any ATDS, PTDS, or APV to Plaintiff's Cellular Telephone in willful or knowing violation of the TCPA or the regulations proscribed thereunder.

71.     As of the date of this complaint, Defendants did not initiate a law suit in an effort to collect the Debt.  Likewise, no final judgment with respect to the Debt has been obtained by, or transferred to, Defendants.

**COUNT ONE:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**<u>VIOLATION OF FLORDA STATUTES, SECTION 559.72(7)</u>**

Plaintiff re-alleges paragraphs one (1) through seventy-one (71) as if fully restated herein and further states as follows:

72.     Defendants are each subject to, and both violated the provisions of, Florida Statutes, Section 559.72(7) by collecting consumer Debt from Plaintiff through means which can reasonably

be expected to abuse or harass Plaintiff.

73.     Specifically, despite Plaintiff's explicit request in May 2018 that Defendants cease contacting her on her Cellular Telephone, Defendants repeatedly sent text messages directly to Plaintiff's Cellular Telephone using an ATDS, PTDS, or APV between *at least* October 2018 and November 2018 in their attempts to collect the Debt.

74.     Further, despite Defendants possessing actual knowledge that Plaintiff retained Undersigned Counsel with respect to the Debt and possessing Undersigned Counsel's contact information via the Fax of Representation, Defendants continued to communicate directly with Plaintiff in an attempt to collect the Debt by sending *at least* four (4) billing statements directly to Plaintiff.

75.     Defendants' conduct served no purpose other than to annoy, harass, and abuse Plaintiff into paying the Debt by leading Plaintiff to believe that Defendants could and would continue to impermissibly and unlawfully communicate directly with Plaintiff in an attempt to collect the Debt—including by using an ATDS, PTDS, or APV to unlawfully make calls to Plaintiff's Cellular Telephone—until Plaintiff made a payment on the Debt.

76.     Defendants' willful, flagrant and vulgar violation of, *inter alia*, the Florida Consumer Collections Practices Act as a means to collect a Debt, constitutes unlawful conduct and harassment as is contemplated under Florida Statutes, Section 559.72(7).

77.     As a direct and proximate result of Defendants' actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

**COUNT TWO:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**VIOLATION OF FLORIDA STATUTES, SECTION 559.72(18)**

Plaintiff re-alleges paragraphs one (1) through seventy-one (71) as if fully restated herein and further states as follows:

78.     Defendants are each subject to, and both violated the provisions of, Florida Statutes, Section 559.72(18) by intentionally and repeatedly communicating directly with Plaintiff after receiving notice and possessing actual knowledge that Plaintiff retained Undersigned Counsel with respect to the Debt and after Defendants possessed Undersigned Counsel's contact information.

79.     Specifically, Defendants possessed actual knowledge that Plaintiff retained Undersigned Counsel with respect to the Debt and possessed Undersigned Counsel's contact information via the Fax of Representation.

80.     Despite possessing actual knowledge of Undersigned Counsel's representation of Plaintiff with respect to the Debt and Undersigned Counsel's contact information, Defendants subsequently made *at least* two (2) calls directly to Plaintiff's Cellular Telephone, sent *at least* six (6) text messages directly to Plaintiff's Cellular Telephone and also sent *at least* six (6) billing statements directly to Plaintiff in an attempt to collect the Debt.

81.     As such, Defendants attempted to collect the Debt directly from Plaintiff, a known represented party in violation of Florida Statutes, Section 559.72(18).

82.     As a direct and proximate result of Defendants' actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

### COUNT THREE:
### TELEPHONE CONSUMER PROTECTION ACT-
### VIOLATION OF 47 UNITED STATES CODE, SECTION 227(b)(1)(A)

Plaintiff re-alleges paragraphs one (1) through seventy-one (71) as if fully restated herein and further states as follows:

83.     Defendants are each subject to, and both violated the provisions of, 47 United States Code, Section 227 (b)(1)(A) by using an ATDS, PTDS, or APV to make calls and send text messages to Plaintiff's Cellular Telephone in an attempt to collect the Debt without Plaintiff's prior express consent.

84.     At no time herein did Defendants possess Plaintiff's prior express consent to make calls or send text messages to Plaintiff's Cellular Telephone using an ATDS, a PTDS, and/or an APV.

85.     If Defendants contend they possessed such consent, Plaintiff revoked any such purported consent via the Fax of Representation wherein Plaintiff requested that Defendants cease communicating with Plaintiff regarding the Debt, provided notice of Undersigned Counsel's legal representation of Plaintiff with respect to the Debt, and explicitly revoked any prior existing consent permitting Defendants to lawfully make calls or send text messages to Plaintiff's Cellular Telephone regarding the Debt.

86.     Additionally, if Defendants contend their telephone calls and text messages were sent for "informational purposes only," Defendants nevertheless lacked the required prior express consent necessary to make informational calls or send information text messages to Plaintiff's Cellular Telephone using an ATDS, PTDS, or APV.

87.     Between October 2018 and January 2019, despite lacking Plaintiff's prior express consent and after Plaintiff requested that Defendants cease contacting her directly regarding the Debt via the Fax of Representation, Defendants made *at least* two (2) calls to Plaintiff's Cellular Telephone using an ATDS, PTDS, or APV.

88.     Additionally, between October 2018 and November 2018, Defendants sent *at least* six (6) text messages to Plaintiff's Cellular Telephone using an ATDS, PTDS, or APV in their attempts to collect the Debt.

89.     The telephone calls made by Defendants and text messages sent by Defendants complained of herein are the result of repeated, willful, and knowing violations of the TCPA.

90.     As a direct and proximate result of Defendants' conduct, Plaintiff suffered:

a. The periodic loss of her Cellular Telephone service and the cost associated therewith;

b. Lost material costs associated with the use of peak time minutes allotted under her Cellular Telephone service contract; and

c. Stress, anxiety, loss of sleep, invasion of privacy, and deterioration of relationships, both personal and professional, as a result of the repeated willful and knowing text messages sent in violation of the TCPA.

## PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiff respectfully requests an entry of:

a. Judgment against Defendants declaring that Defendants violated the FCCPA;

b. Judgment against Defendants for maximum statutory damages for violations of the FCCPA;

c. Judgment providing injunctive relief, prohibiting Defendants from further engaging in conduct that violates the FCCPA and the TCPA;

d. Judgment against Defendants for statutory damages in the amount of $500.00 for each text message sent by Defendants that violated the TCPA;

e. Judgment against Defendants for treble damages in the amount of an additional $1,000.00 for each text message sent by Defendants that violated the TCPA for which Defendants acted knowingly and/or willfully;

f. Actual damages in an amount to be determined at trial;

g. An award of attorneys' fees and costs; and

h. Any other such relief the Court may deem proper.

16

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Respectfully submitted,

**LEAVENLAW**

/s/ *Ian R. Leavengood*

**[X] Ian R. Leavengood, Esq., FBN 0010167**
**☐ Gregory H. Lercher, Esq., FBN 0106991**
**☐ Sean E. McEleney, Esq., FBN 0125561**
Northeast Professional Center
3900 First Street North, Suite 100
St. Petersburg, FL 33703
Phone: (727) 327-3328
Fax: (727) 327-3305
consumerservice@leavenlaw.com
glercher@leavenlaw.com
smceleney@leavenlaw.com
*Attorneys for Plaintiff*

## VERIFICATION OF COMPLAINT AND CERTIFICATION

STATE OF FLORIDA         )
                             )
COUNTY OF _PINELLAS_   )

Plaintiff CUC WEST, having first been duly sworn and upon oath, deposes and says as follows:

1. I am a Plaintiff in this civil proceeding.

2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.

3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.

4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.

5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.

6. Each and every exhibit which has been attached to this Complaint, if any, is a true and correct copy of the original.

7. Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated any exhibits, except that some of the attached exhibits, if any, may contain some of my own handwritten notations.

Cuc West

Subscribed and sworn to before me this _16th_ day of _JANUARY_, 2019.

Notary Public

My Commission Expires: _02-25-2019_     Proof of I.D.: _FL DRIVER'S LICENSE_



FARZAANA N. STONE
MY COMMISSION # FF203870
EXPIRES February 25, 2019
(407) 398-0153    FloridaNotaryService.com